No. 09-5373

_____

**In the United States Court of Appeals
for the District of Columbia Circuit**

_____

**CARMEN S. TALAVERA,**

    **Plaintiff-Appellant,**

    **v.**

**RAJIV SHAH, in his official capacity as Administrator,
U.S. Agency for International Development,**

    **Defendant-Appellee.**

_____

On Appeal from the United States District Court
for the District of Columbia (No. 1:07-CV-00720)
The Honorable John D. Bates

_____

**Amicus Curiae Brief of the
Metropolitan Washington Employment Lawyers Association
in Support of Appellant Carmen S. Talavera
and Urging Reversal**

_____

John R. Ates
Ates Law Firm, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone: (703) 647-7401
j.ates@ateslaw.com

Alan R. Kabat
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
Telephone: (202) 745-1942
kabat@bernabeipllc.com

Counsel to Amicus Curiae

DATED:  August 20, 2010

## Certificate as to Parties, Rulings, and Related Cases

(A)     **Parties and Amici.**  Except for the Metropolitan Washington Employment Lawyers Association, appearing as *amicus curiae* on behalf of Plaintiff-Appellant, all parties appearing before the district court and in this Court are listed in the Brief of Appellant.

(B)     **Rulings Under Review.**  References to the rulings at issue appear in the Brief of Appellant.

(C)     **Related Cases.**  This case has not previously been before this Court. There are no related cases.

## Rule 28(a)(2)(B) Corporate Disclosure Statement

The Metropolitan Washington Employment Lawyers Association is an association.  It does not have any corporate parent.  It does not have any stock, and therefore no publicly held company owns 10% or more of the stock of this *amicus*.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES     i

RULE 28(a)(2)(B) CORPORATE DISCLOSURE STATEMENT     .     i

TABLE OF AUTHORITIES     .     .     .     .     .     .     .     iv

GLOSSARY OF ABBREVIATIONS .     .     .     .     .     .     viii

JURISDICTIONAL STATEMENT     .     .     .     .     .     .     1

STATEMENT OF THE ISSUES     .     .     .     .     .     .     1

STATUTES AND REGULATIONS     .     .     .     .     .     .     1

STATEMENT OF THE FACTS     .     .     .     .     .     .     2

SUMMARY OF ARGUMENT     .     .     .     .     .     .     2

STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF
AUTHORITY TO FILE .     .     .     .     .     .     .     .     3

ARGUMENT     .     .     .     .     .     .     .     .     4

I.     Employees are not Required in a Retaliation Claim to Submit
       Direct Evidence of Knowledge by a Decision-Maker to Prove
       Causation, and the District Court Erred in Requiring Otherwise .     4

II.    The District Court Applied an Incorrect Legal Standard in Assessing
       whether any Adverse Inferences Could be Drawn from Defendant's
       Prejudicial Destruction of Relevant Records that It was Legally
       Required to Retain     .     .     .     .     .     .     .     11

       A.     Both Congress and the U.S. Equal Employment Opportunity
              Commission Have Prohibited the Destruction of Evidence
              when Legal Proceedings are Underway     .     .     .     12

B.   The Case Law Does Not Support a *Per Se* Rule Governing Whether an Adverse Inference Can Be Drawn from the Destruction of Relevant Evidence    .    .    .    .    17

III.   The District Court Applied an Incorrect Legal Standard in Rejecting an Unauthorized Psychiatric Examination as a Basis for a Federal Employee's Retaliation Claim    .    .    .    .    22

CONCLUSION    .    .    .    .    .    .    .    .    .    29

CERTIFICATE OF COMPLIANCE    .    .    .    .    .    .    31

CERTIFICATE OF SERVICE    .    .    .    .    .    .    .    32

## TABLE OF AUTHORITIES

### CASES

*Aka v. Washington Hosp. Ctr.*,
156 F.3d 1284 (D.C. Cir. 1998) (*en banc*) . . . . 7

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990) . . . . . . 9

*Buckley v. Mukasey*,
538 F.3d 306 (4th Cir. 2006) . . . . . 10

\* *Burlington Northern & Santa Fe Railway Co. v. White*,
548 U.S. 53 (2006) . . . . . . 22-25, 29

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) . . . . . . 20-21

*Carter-Obayuwana v. Howard Univ.*,
764 A.2d 779 (D.C. 2001) . . . . . . 9

*Chappell-Johnson v. Bair*,
574 F. Supp. 2d 87 (D.D.C. 2008) . . . . 19

*Equal Employment Opportunity Comm'n v. Shell Oil Co.*,
466 U.S. 54 (1984) . . . . . . 14

*Equal Employment Opportunity Comm'n v. Target Corp.*,
460 F.3d 946 (7th Cir. 2006) . . . . . 12-13

*Favors v. Fisher,*
13 F.3d 1235 (8th Cir. 1994) . . . . . 21

*Flynn v. N.Y. State Div. of Parole*,
620 F. Supp. 2d 463 (S.D.N.Y. 2009) . . . . 24

\* Authorities upon which we chiefly rely are marked with asterisks.

*Franco v. R & K Specialized Homes, Inc.*,
    No. 09-CV-452, 2010 WL 2278326 (W.D. Tex. June 4, 2010)  .   16

*Harris v. Dept. of the Air Force*,
    62 M.S.P.R. 524 (M.S.P.B. 1994)    .    .    .    .   26, 27-28

*Hayes v. Shalala*,
    902 F. Supp. 259 (D.D.C. 1995)    .    .    .    .    .   10

*Henderson v. Runyon*,
    EEOC No. 01970326, 1997 WL 792563 (E.E.O.C. Dec. 18, 1997)   28

*Hicks v. Gates Rubber Co.*,
    833 F.2d 1406 (10th Cir. 1987) .    .    .    .    .   21

*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) .    .    .    .    .    .  7, 10

*Holland v. United States*,
    348 U.S. 121 (1954)    .    .    .    .    .    .    .   7

* *Jones v. Bernanke*,
    577 F.3d 670 (D.C. Cir. 2009) .    .    .    .  . 5, 6, 9, 10, 11

*Jones v. Hawley*,
    255 F.R.D. 51 (D.D.C. 2009)   .    .    .    .    .   20

*Kirkendall v. Dept. of the Army*,
    573 F.3d 1318 (Fed. Cir. 2009) .    .    .    .    .   14

*Klippness v. Barr*,
    No. 01912549, 1992 WL 1374934 (E.E.O.C. Dec. 9, 1991)   .   15

*Latimore v. Citibank Fed. Sav. Bank,*
    151 F.3d 712 (7th Cir. 1998)   .    .    .    .    .   21

*L'Bert v. Dept. of Veterans Affairs*,
    88 M.S.P.R. 513 (M.S.P.B. 2001)   .    .    .    .   28

*Lindahl v. Office of Personnel Management*,
    470 U.S. 768 (1985)    .    .    .    .    .    .    .    27

*Mogenhan v. Napolitano*,
    __ F.3d __, 2010 WL 2899059 (D.C. Cir. July 27, 2010)    .    .    22-23

*Munford v. Potter*,
    EEOC No. 01A60384, 2006 WL 2041355 (E.E.O.C. July 12, 2006)    28

*Natividad v. Dept. of Agriculture*,
    5 M.S.P.B. 426, 5 M.S.P.R. 415 (M.S.P.B. 1981)    .    .    .    14-15

*Olmstead v. Taco Bell*,
    141 F.3d 1457 (11th Cir. 1998) .    .    .    .    .    .    6

*Price v. Thompson*,
    380 F.3d 209 (4th Cir. 2004)    .    .    .    .    .    .    9-10

*Rozen v. District of Columbia*,
    702 F.2d 1202 (D.C. Cir. 1983) (*per curiam*)    .    .    .    14

*Sewell v. Nicholson*,
    No. 07A30006, 2006 WL 2873219 (E.E.O.C. Sept. 27, 2006)    .    15

*Shepherd v. American Broadcasting Co.*,
    62 F.3d 1468 (D.C. Cir. 1995)    .    .    .    .    .    .    18

*Smith v. Napolitano*,
    626 F. Supp. 2d 81 (D.D.C. 2009)    .    .    .    .    .    18-19

*Steele v. Schafer*,
    535 F.3d 689 (D.C. Cir. 2008)    .    .    .    .    .    .    23

*Traynor v. Dept. of the Air Force*,
    64 M.S.P.R. 386 (M.S.P.B. 1994)    .    .    .    .    .    27

*United States v. Fontenot*,
    __ F.3d __, 2010 WL 2730659 (11th Cir. July 13, 2010)    .    .    16

*United States v. Wortman*,
    488 F.3d 752 (7th Cir. 2007)   .   .   .   .   .   .   16

*United States Postal Serv. Bd. of Govs. v. Aikens*,
    460 U.S. 711 (1983)   .   .   .   .   .   .   .   7, 10

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
    429 U.S. 252 (1977)   .   .   .   .   .   .   .   7

*Von Muhlenbrock v. Billington*,
    579 F. Supp. 2d 39 (D.D.C. 2008)   .   .   .   .   .   20

*Wright v. Southland Corp.*,
    187 F.3d 1287 (11th Cir. 1999) .   .   .   .   .   .   6, 7-8

## STATUTES

18 U.S.C. § 1519  .   .   .   .   .   .   .   .   .   15-16

42 U.S.C. § 2000e-8(c)   .   .   .   .   .   .   .   12, 13

## REGULATIONS

5 C.F.R. § 339.301(e)   .   .   .   .   .   .   .   26-28

29 C.F.R. § 1602.14   .   .   .   .   .   .   .   13-15

## OTHER SOURCES

Kevin F. O'Malley, *et al.*, *Federal Jury Practice and Instructions*
(6th ed. 2008)    .    .    .    .    .    .    .    .    8

Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions* (2007)    .    8

Subcommittee on Compensation and Employee Benefits of the
Committee on Post Office and Civil Service, 95th Cong., 2d Sess.,
*Forced Retirement / Psychiatric Fitness for Duty Exams*
(Comm. Print 1978)    .    .    .    .    .    .    . 26-27

Committee on Pattern Jury Instructions, District Judges Association –
Fifth Circuit, *Fifth Circuit Pattern Jury Instructions: Civil* (2006)
(http://www.lb5.uscourts.gov/juryinstructions/2006CIVIL.pdf)    .    8

## GLOSSARY OF ABBREVIATIONS

EEOC        Equal Employment Opportunity Commission

MSPB        Merit Systems Protection Board

MWELA     Metropolitan Washington Employment Lawyers Association

OPM         Office of Personnel Management

## JURISDICTIONAL STATEMENT

MWELA agrees with the statement of jurisdiction in the Brief of Appellant.

## STATEMENT OF THE ISSUES[1]

MWELA is addressing the following three issues in its amicus brief:

(1)     The district court applied a legal standard requiring Ms. Talavera to produce direct evidence of knowledge of her prior opposition to discrimination by a decision maker that is directly contradictory to the recent decision of this Court in *Jones v. Bernanke*, 577 F.3d 670, 679 (D.C. Cir. 2009).

(2)     The district court applied an incorrect legal standard in assessing whether any adverse inferences could be drawn from the defendants' prejudicial destruction of relevant records that it was legally required to retain.

(3)     The district court misapplied the correct legal standard to Ms. Talavera's claim of retaliation because of her prior opposition to the defendant's discrimination in sending her to a psychiatric examination that was not authorized by law.

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the Brief of Appellant.

---

[1] This Amicus Brief addresses Issues 2, 3 (part), and 5 as set forth in the Brief of Appellant.

## STATEMENT OF THE FACTS

For a detailed statement of proceedings and statement of facts, we refer to the Brief of Appellant.

## SUMMARY OF ARGUMENT

Amicus respectfully submit that this Court should provide guidance to the district courts by making clear that employees who bring retaliation claims are not required, in order to prove causation, to submit direct evidence that the decision-maker knew of their protected conduct.

This Court should further make clear that there is no *per se* rule governing whether an adverse inference can be drawn from the employer's destruction of relevant evidence that it was required to keep, and that an employee is not required to show additional misconduct to obtain an adverse inference.  Instead, the district courts should look to other factors, including whether the employee has other avenues of evidence to compensate for the destroyed evidence, and whether the manager who destroyed the evidence had knowledge of the employee's protected conduct.

Finally, this Court should find that an unauthorized psychiatric examination can be an adverse employment action for purposes of a retaliation claim, since such an examination, by itself, could dissuade a reasonable employee from pursuing her employment discrimination claims.

2

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

The Metropolitan Washington Employment Lawyers Association (MWELA) submits the following pursuant to D.C. Cir. R. App. P. 29(b). MWELA, founded in 1991, is a professional association and is the local chapter of the National Employment Lawyers Association, a national organization of attorneys who specialize in employment law.  MWELA conducts continuing legal education programs for its over 290 members, including an annual day-long conference which usually features one or more judges as speakers.  MWELA also participates as *amicus curiae* in important cases in the three jurisdictions in which its members primarily practice – the District of Columbia, Maryland, and Virginia.

MWELA's members represent employees, including those within the federal work force.  MWELA's members, and their clients, have an important interest in the clarity and proper interpretation of a federal employee's rights under the federal employment discrimination statutes.

On February 23, 2010, this Court granted MWELA's motion for leave to participate as *amicus curiae*.

# ARGUMENT

### I.   Employees are not Required in a Retaliation Claim to Submit Direct Evidence of Knowledge by a Decision-Maker to Prove Causation, and the District Court Erred in Requiring Otherwise.

Amicus respectfully submits that the district court erred in adopting a rule that an employee must submit direct evidence of the decision-maker's knowledge of her protected conduct in order to prove causation for her retaliation claim.  The district court held that a reasonable jury could not find that the agency's refusal to select Ms. Talavera for a Security Specialist position on June 16, 2004, constituted actionable retaliation.  (App. 44-45).  The district court reasoned that because the deciding official, Streufert, denied knowing of Ms. Talavera's June 8, 2004 EEO complaint, he could not have retaliated against her.  The district court found that Ms. Talavera did not "present[] evidence to refute this assertion" but only "mere speculation" (App. 45), despite Ms. Talavera's evidence that Streufert held meetings with other managers who indisputably had knowledge of her protected activity before the refusal to promote, and despite Streufert knowing that she previously engaged in protected activity (*see* Appellant's Brief at 9-10, describing Streufert's knowledge of sexual harassment complaints by Ms. Talavera in 2002 and her complaints directly to Streufert regarding his appointment as acting team leader).  The district court effectively ruled that Ms. Talavera must present direct evidence of knowledge by the deciding official to rebut his claimed lack of

4

knowledge.  (App. 44-45).  The district court also held that Ms. Talavera could not

show causation based on Streufert's knowledge of Ms. Talavera's prior complaints

because they supposedly were "too far removed from her June 2004 non-selection

to establish the requisite causal connection."  (App. 44 n.6).  Yet, the district court

did not consider that this was the first opportunity for Streufert to retaliate against

Ms. Talavera, and did not consider the evidence as a whole and draw inferences in

Ms. Talavera's favor.

The district court's causation standard -- and its view of the type of evidence

required to prove it -- constitutes reversible error.  The district court's requirement

for Ms. Talavera to introduce specific evidence to show the deciding official knew

of prior protected activity directly conflicts with this Court's decision in *Jones v.*

*Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).  This Court in *Jones* rejected the

argument that "temporal proximity evidence is worthless absent additional

evidence that [the relevant] supervisors knew of" the protected activity.  *Id.*

Rather, in cases as this, the question is not what the deciding official knew or did

not know; instead, it is what the *employer* knew or did not know.  *Id.*  Specifically,

where a claimant presents evidence that "the *employer* had knowledge of the

employee's protected activity, and the adverse personnel action took place shortly

after that activity," "an inference of retaliatory motive" is raised.  *Id.* (emphasis in

original).  "[I]f such evidence can support an inference of actual retaliatory motive,

it necessarily can support an inference of mere knowledge." *Id.*

Because Ms. Talavera produced evidence showing that the agency had knowledge of her protected activity on June 8, 2004, and the agency passed her over for a promotion only eight days later, she has raised both an inference of knowledge and retaliatory motive. *Id.* The district court's ruling that an inference of retaliatory motive cannot be raised without specific evidence of knowledge by the deciding official constitutes reversible error.

Sister circuits likewise have construed the retaliation causation requirement as not requiring "direct" evidence of knowledge: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmstead v. Taco Bell*, 141 F.3d 1457, 1460 (11th Cir. 1998).[2] In *Olmstead*, the defendant claimed that the firing manager did not know of the protected conduct and argued that the plaintiff therefore could not establish the requisite causal link between the protected conduct and adverse action, and the district court set aside a jury verdict for plaintiff on this ground. *Id.* at 1460-61. In reversing and reinstating the jury's verdict on liability, the Eleventh Circuit allowed the jury to infer retaliation based on the employer's knowledge of plaintiff's protected activity, and specifically stated that "conclusive proof of the plaintiff's theory of the case is not required" to prove causation. *Id.* at 1461.

---

[2] Indeed, the use of the phrase "direct evidence" generates unnecessary confusion. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1293-1303 (11th Cir. 1999).

6

Here, the district court's crabbed outlook not only conflicts with prior settled precedent of this Court, but it also treats issues of fact in retaliation claims differently than other questions of fact. Yet, discrimination and retaliation claims should not be treated any differently than other cases when it comes to proving knowledge, motive, or intent. *See United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 716 (1983) (courts should not "treat discrimination differently from other ultimate questions of fact," since "'The state of a man's mind is as much a fact as the state of his digestion.'") (quoting *Edgington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885)); *cf. Holland v. United States*, 348 U.S. 121, 139-40 (1954) (stating that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence"); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (determining whether a given action was motivated by a discriminatory purpose requires an "inquiry into such circumstantial and direct evidence of intent as may be available.").

Indeed, the apparent point of this Court's decisions in *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*), *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) and *Jones* is to ensure that discrimination and retaliation claims are treated the same as other cases on questions of fact. The Eleventh Circuit also recognized this critical point. *See Wright*, 187 F.3d at 1301

7

("If we were to require non-circumstantial evidence to prove that a protected personal characteristic was the basis of an employment decision, we would be treating this factual question very differently from other ultimate questions of fact.") (collecting cases).  Juries are frequently (and correctly) instructed that "the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." 1A Kevin F. O'Malley, *et al.*, *Federal Jury Practice and Instructions* § 12.04, at 136 (6th ed. 2008); *see also* 4 Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions* ¶ 74.01, at No. 74-2 (2007); U.S. Fifth Circuit District Judges Association, *Pattern Jury Instructions: Civil Cases* § 2.18, at 22 (2006).  If a jury can give equal (or greater) weight to circumstantial evidence than so-called "direct" evidence, then requiring only "direct" evidence to prove knowledge when a decision-maker claims ignorance is baffling.  Imagine the consequences of such a rule to criminal cases when the driver of a car claims lack of knowledge as to drugs found in the trunk.

   The tunnel vision with respect to the evidence of the agency's knowledge (and even Streufert's knowledge) also led the district court to view the events at issue as discrete.  Rather than compartmentalizing the evidence, the district court should have viewed the evidence in context as a whole, as the ultimate question is whether there is evidence from which a jury could reasonably infer retaliation, and summary judgment should be denied if retaliatory motive could be inferred from

8

all the facts and circumstances viewed collectively. *See Jones,* 557 F.3d at 680 (explaining courts should view "the full context (including the whole chain of events since the initial filing of a complaint)" when evaluating retaliation claims); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."); *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 794 (D.C. 2001) ("Events obscure, ambiguous, or even meaningless when viewed in isolation may, like the component parts of an equation, become clear, definitive, and informative when considered in relation to other action.  Conduct, like language, takes its meaning from the circumstances in which it occurs.").

By slicing and discounting the evidence as it did, the district court failed to consider that Streufert's refusal to promote Ms. Talavera in 2004 was the first opportunity he had as a deciding official to retaliate against her for her prior complaints, including complaints that he was previously selected over her as the interim team leader.  Causation is shown when retaliation is undertaken at the first available opportunity. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (finding causation shown for prima facie case despite passage of approximately ten months between the complaint and the non-selection decision, as "the employer's

9

knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element"). When a non-selection took place three years after the protected activity, the causal connection was not broken, because the plaintiff had applied for no other job in the interim, so that the non-selection occurred "the first time he was vulnerable to retaliation" by a supervisor who was involved in enforcing a settlement of the prior protected activity. *Hayes v. Shalala*, 902 F. Supp. 259, 264 (D.D.C. 1995); *cf. Holcomb*, 433 F.3d at 903 (finding inference of causation raised where employee engaged in protected activity two years prior to events at issue and where she also engaged in protected activity during period of alleged retaliation); *Buckley v. Mukasey*, 538 F.3d 306, 316, 318-19 (4th Cir. 2006) (holding plaintiff's involvement in decades-long lawsuit against agency should have been admitted before jury to show agency's motive to retaliate by failing to promote her one month after she sent emails relating to that litigation, and to show agency's knowledge of protected conduct).

At bottom, courts must not invade the province of the jury and weigh the credibility of witnesses and evidence on contested issues of fact. *Jones*, 557 F.3d at 681. States of mind, including knowledge, are inherent questions of fact. *See Aikens*, 460 U.S. at 716. Reviewing the contradictory evidence in the record in the light most favorable to Ms. Talavera, a reasonable jury could reach the conclusion that the agency, via Streufert, retaliated against her based on her protected

complaints – both the ones in the past and her most recent one on June 8, 2004.

Unlike this Court, or the district court on summary judgment, a jury will be able to

hear and see the testimony of witnesses, presumably including Streufert and other

agency managers, and may find some of it more credible and weighty (or not).

This Court is bound not to do so here.  Ms. Talavera has proffered substantial

evidence showing knowledge by the agency of her protected activity, after which

closely followed her non-selection.  Together, this evidence is more than sufficient

to support "an inference of retaliatory motive" on the ultimate question at issue on

this claim.  *Jones*, 557 F.3d at 679.  The Court should reverse summary judgment

and remand for a trial.

## II.     The District Court Applied an Incorrect Legal Standard in Assessing whether any Adverse Inferences Could be Drawn from Defendant's Prejudicial Destruction of Relevant Records that It was Legally Required to Retain.

Amicus respectfully submits that this Court should find that the district court

erred in adopting a *per se* rule that the destruction of evidence, "standing alone,"

was not sufficient to support an adverse inference against the spoliator of evidence.

Instead, this Court should recognize that the lower courts need to look to whether

the employee had other avenues of evidence that she could pursue in discovery that

would adequately compensate for the destroyed evidence, and whether the

manager who destroyed the evidence had any involvement with, or knowledge of,

the employee's prior or ongoing complaints of workplace discrimination, which

could lead to the inference that the manager had the motivation or intent to destroy inculpatory evidence.  Moreover, this analysis must be conducted in light of the mandate by both Congress and the U.S. Equal Employment Opportunity Commission (EEOC) that relevant documents must be preserved by regulation and especially whenever legal proceedings are underway.

### A. Both Congress and the U.S. Equal Employment Opportunity Commission Have Prohibited the Destruction of Evidence When Legal Proceedings are Underway.

Both Congress and the EEOC have recognized the need to protect individuals and the investigative agencies from the consequences of the destruction of documents, particularly where, as here, legal proceedings are underway, or are reasonably anticipated.

Congress, as part of Civil Rights Act of 1964, required all employers to maintain records relevant to employment claims:

> Every employer . . . shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission [EEOC] shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder.

42 U.S.C. § 2000e-8(c).  As the Seventh Circuit recently concluded, in finding that it was reversible error to enter summary judgment in the employer's favor when the employer had destroyed personnel documents in violation of this statute,

"Nothing in Target's new record-keeping policy clearly prevents bad faith destruction of resumes or other employment application documents," since "Target depends greatly on the diligence of the company's recruiters and its managerial personnel to ensure that resumes, applications and interview guides are retained," yet it had not taken any steps "to ensure compliance with the EEOC's record keeping requirements." *Equal Employment Opportunity Comm'n v. Target Corp.*, 460 F.3d 946, 956 (7th Cir. 2006).

The EEOC has promulgated regulations, pursuant to 42 U.S.C. § 2000e-8(c), requiring employers covered by Title VII and the Americans with Disabilities Act to preserve all records relating to employment decisions:

> **Any personnel or employment record made or kept by an employer** (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) **shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later.** In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. **Where a charge of discrimination has been filed,** or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, **the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.** . . .

29 C.F.R. § 1602.14 (emphasis added).

Both the Supreme Court and this Court have recognized the need for

13

preserving documents under Section 1602.14, and the consequences of an employer's failure to do so. *See Equal Employment Opportunity Comm'n v. Shell Oil Co.*, 466 U.S. 54, 78 n.35 (1984) (Section 1602.14 "requires an employer covered by Title VII to retain all personnel records for six months after they are created and, when a charge of discrimination has been filed against the employer, to retain all records relevant to the charge until the dispute is resolved."); *Rozen v. District of Columbia*, 702 F.2d 1202, 1204 (D.C. Cir. 1983) (*per curiam*) ("even if pertinent records were destroyed, it is apparent that they were done so in violation of the EEOC regulation that requires an employer against whom a discrimination claim is filed to 'preserve all personnel records relevant to the charge or action until final disposition of the charge or action'").

Similarly, the U.S. Court of Appeals for the Federal Circuit, the Merit Systems Protection Board, and the EEOC, in adjudicating claims brought by federal employees, have held that an adverse inference can be drawn from the agency's failure to preserve records relevant to the employment dispute, in violation of Section 1602.14. *See, e.g., Kirkendall v. Dept. of the Army*, 573 F.3d 1318, 1327 (Fed. Cir. 2009) ("Under the circumstances of this case, the board [MSPB] should have drawn adverse inferences against the agency with respect to the documents destroyed. Failure to have done so is an abuse of discretion."); *Natividad v. Dept. of Agriculture*, 5 M.S.P.B. 426, 428, 5 M.S.P.R. 415, 418

14

(M.S.P.B. 1981) ("We find that the non-production of the notebook, which was taken from petitioner and was in the agency's control, is prejudicial to petitioner's ability to support his defense. . . . the non-production seriously impairs the strength of the record presented by the agency to support its charges."); *Sewell v. Nicholson*, No. 07A30006, 2006 WL 2873219, at *2 (E.E.O.C. Sept. 27, 2006) ("Specifically, the uncontroverted evidence establishes that the agency . . . destroyed the [promotion file] after complainant filed the instant complaint and prior to the time frame established by its guidelines which permits destruction after two years. . . . Therefore, the agency's failure to provide the [promotion file] gives rise to an adverse inference against the agency's articulated reasons for non-selection of complainant."); *Klippness v. Barr*, No. 01912549, 1992 WL 1374934, at *5 (E.E.O.C. Dec. 9, 1991) ("This failure [to preserve] compels the application of an adverse inference that if the relevant information had been provided it would have been favorable to the appellant and unfavorable to the agency.  To do otherwise would encourage federal agencies to purge records related to EEO complaints which they are legally obligated to maintain.").

Congress recently enacted the so-called "document shredding" statute, which criminalizes the knowing destruction of documents in order to interfere with or influence an investigation or legal proceeding:

> **Whoever knowingly alters, destroys**, mutilates, conceals, covers up, falsifies, or makes a false entry in **any record, document**, or tangible

> object **with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case**, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added).  This provision covers destruction of documents while an EEOC charge or investigation is pending, since that is a "matter within the jurisdiction of any . . . agency of the United States."

Although Section 1519 has been primarily discussed in the criminal context, it does evince strong Congressional intent to proscribe the destruction of documents.  *See, e.g., United States v. Fontenot*, No. 08-12266, __ F.3d __, 2010 WL 2730659, at *4 (11th Cir. July 13, 2010) (upholding conviction under Section 1519 for destroying evidence); *United States v. Wortman*, 488 F.3d 752, 754-55 (7th Cir. 2007) (same); *Franco v. R & K Specialized Homes, Inc.*, No. 09-CV-452, 2010 WL 2278326, at *4 (W.D. Tex. June 4, 2010) ("Rather than maintaining the personnel file in its actual condition . . . the [employer's] altering of the document could have the effect of impeding, obstructing, or influencing the EEOC's investigation," in violation of Section 1519).

Thus, Amicus respectfully submit that both Congress and the EEOC expressed a clear intent as to the importance of preserving documents once legal proceedings are underway, including administrative proceedings, and that this should be considered by the district courts in assessing whether an adverse

inference should be drawn from an employer's destruction of records that it was required to preserve.

**B.    The Case Law Does Not Support a *Per Se* Rule Governing Whether an Adverse Inference Can Be Drawn from the Destruction of Relevant Evidence.**

Amicus further submits that the case law from the district courts in this Circuit does not support a *per se* rule that an adverse inference cannot be drawn from the destruction of relevant evidence that the employer was required to maintain absent other evidence of discrimination.  Here, the district court cited three other district court decisions from this Circuit, and a Second Circuit decision for this proposition, although those cases do not support the district court's conclusion.  The district court then established a rule that rejected Ms. Talavera's assertion that an adverse inference was warranted from the hiring official's (Streufert's) destruction of his interview notes (even assuming that they existed in the first place, a disputed factual issue that the district court resolved in the agency's favor) two months after the interview, and two months after Ms. Talavera's formal discrimination complaint.

However, the case law, and the federal statutes and regulations governing document preservation, do not support the district court's conclusion that an employee needs "additional evidence" beyond the destruction of documents to support an adverse inference that should be considered in addressing the

17

employer's summary judgment motion.

As a threshold matter, the district court should have considered this issue in light of this Court's recognition that: "We thus agree . . . that 'ABC [employer] had an obligation to preserve . . . documents it knew or reasonably should have known were relevant . . . if it knew the destruction or alteration of those documents would prejudice the plaintiffs.'" *Shepherd v. American Broadcasting Co.*, 62 F.3d 1468, 1481 (D.C. Cir. 1995). This "prejudice" to the plaintiff can arise from the plaintiff's inability to obtain independent evidence from other sources relating to the subject matter of the destroyed documents, or from the fact that the manager who destroyed the documents knew that plaintiff had previously complained, or was currently complaining, about workplace discrimination.

Critically, the case law relied upon by the district court in creating its *per se* rule (App. 52) is inapposite, since in two of those cases, the employee had other, independent avenues of evidence to pursue that could have compensated for the absence of the destroyed evidence. In *Smith*, which arose from the employee's non-selection for two positions, the court found that the loss of the case file for the first position and the interview notes for the second position was immaterial, since the "questions on the . . . questionnaire [for the first position] were largely identical to those on the . . . questionnaire [for the second position]," and there were three panelists interviewing the applicants for the second position, so that each could be

18

separately asked about the interviews, and, moreover, "the plaintiff had already been excluded by the time these notes were taken." *Smith v. Napolitano*, 626 F. Supp. 2d 81, 101-02 (D.D.C. 2009).

Similarly, in *Chappell-Johnson*, in which the interview notes and evaluation sheets prepared by two managers who conducted the interviews were somehow lost by their supervisor, the hiring manager who made the actual decision, the employee had the opportunity to depose all three managers separately as to their recollections of the interviews and the hiring process. *Chappell-Johnson v. Bair*, 574 F. Supp. 2d 87, 101-02 (D.D.C. 2008).

Here, in contrast, the hiring official (Streufert) was the <u>only</u> manager present during the interviews of Ms. Talavera and the five male applicants (App. 571), and there is no independent testimony that any other manager ever saw the notes that the hiring official claimed he took at the time of the interviews.  Instead, the unrebutted testimony of Ms. Talavera is that (1) the hiring official did not take any notes during her interview, and (2) she spoke with another applicant shortly after the time of the interviews, and they determined that quite different questions were asked during their respective interviews.  (App. 571).  Thus, unlike the employees in *Chappell-Johnson* and *Smith*, Ms. Talavera did <u>not</u> have any other independent avenues of evidence, other than the testimony of the hiring official himself, that she could pursue to determine whether he even created the notes in the first place,

19

or what questions he asked of each of the six applicants and the answers that each

proffered in response.  *See*, *e.g.*, *Jones v. Hawley*, 255 F.R.D. 51, 54 (D.D.C. 2009)

(ordering adverse inference from plaintiffs' failure to preserve documents that "go

to the very heart of their claims for damages and there is no substitute for them

which the defendants could use or find").

     In *Von Muhlenbrock*, the third district court decision relied upon by the

district court below (App. 52), the destruction of evidence was immaterial since

that plaintiff "has proffered no evidence" that the manager who allegedly

discriminated against her in the past "had any involvement in the selection of [a

comparator] or that [he] even knew that plaintiff had applied for the vacant

position."  *Von Muhlenbrock v. Billington*, 579 F. Supp. 2d 39, 45 (D.D.C. 2008).

Moreover, as in *Smith*, *supra*, "the selection panel never had the occasion to

consider plaintiff's qualifications or interview performance," since she did not

make the initial cut of applicants.  *Id.*  Here, in contrast, Ms. Talavera alleged that

the hiring official (Streufert) failed to take action when she previously complained

of discrimination in the workplace, so that he knew of her prior complaints (App.

485, 523, 598), and it is uncontested that Streufert was the sole person who

conducted the interviews of the applicants, including Ms. Talavera (App. 571, 612-

613), so that any "rule" derived from *Von Muhlenbrock* is inapposite.

     The district court's reliance on *Byrnie* (App. 52) is even more misplaced,

since that Second Circuit decision held that it was reversible error to grant summary judgment given the employer's destruction of evidence relating to the hiring process.  In fact, the Second Circuit actually adopted a rule, previously applied by the Seventh, Eighth, and Tenth Circuits, that the destruction of evidence in violation of the aforementioned EEOC regulation requiring that documents be preserved while a charge of discrimination is pending, can give rise to an inference of spoliation, so that an adverse inference is warranted.  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001) (citing *Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 716 (7th Cir. 1998) ("The violation of a record-retention regulation creates a presumption that the missing record contained evidence adverse to the violator."); *Favors v. Fisher,* 13 F.3d 1235, 1239 (8th Cir. 1994) (because employer violated record retention regulation, plaintiff "was entitled to the benefit of a presumption that the destroyed documents would have bolstered her case"); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1419 (10th Cir. 1987)).  Thus, the Second Circuit concluded that:  "a party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence.  It then becomes a matter for the jury to decide, based on the strength of the evidence presented, whether the documents likely had such content."  *Id.* at 110.  Here, the district court in this case did not allow the jury to decide this issue.

Even if this Court were to consider applying *Chappell-Johnson*, *Smith*, and

*Von Muhlenbrock* in crafting a rule governing adverse inferences arising from the spoliation of evidence, it must also recognize that such a rule should also consider (1) whether the employee has no other, independent avenues of evidence that could compensate in part for the loss of evidence; and (2) whether the manager who destroyed the evidence was also involved with, or had knowledge of, the employee's prior workplace complaints.  When one or both conditions are met, as here, then it would be improper to create or apply a *per se* rule that an adverse inference is never warranted, and the district courts in these circumstances need to scrutinize more closely the circumstances surrounding the employer's loss of evidence and its potential consequences for the employee.

### III.    The District Court Applied an Incorrect Legal Standard in Rejecting an Unauthorized Psychiatric Examination as a Basis for a Federal Employee's Retaliation Claim.

Amicus respectfully submits that the district court misapplied the *Burlington Northern* standard in determining that an unauthorized psychiatric examination, "by itself," could not form the basis for a retaliation claim under Title VII.  (App. at 42).  Under the Supreme Court's decision in *Burlington Northern*, the test for determining whether a challenged action is "materially adverse" is whether "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006); *accord Mogenhan v. Napolitano*, No. 08-5457, __ F.3d __, 2010

WL 2899059, at *3 (D.C. Cir. July 27, 2010) (same); *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (same).

As the Supreme Court explained, the standard should be defined "in general terms because the significance of any given act . . . will often depend upon the particular circumstances.  Context matters." *Burlington Northern*, 548 U.S. at 69. Given the varying impact that an employer's actions will have on certain employees, the Supreme Court explained that "a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an 'act that would be immaterial in some situations is material in others.'" *Id.* (citations omitted).  Thus, the *Burlington Northern* standard properly focuses on the facts and circumstances of the particular conduct at issue, rather than deciding *a priori* what conduct can or cannot be retaliation.  *Id.* at 71 (explaining that deciding whether an action "is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances").

Here, the district court did not look at the individual circumstances surrounding the agency's demand that Ms. Talavera take a psychiatric examination that was unjustified, as it was required to do under *Burlington Northern*.  Instead, the district court looked at two other district court decisions which held, under different factual circumstances, that a psychiatric examination was not an adverse

23

employment action.  (App. 42) ("courts generally have found that a psychiatric exam, by itself, is not inherently adverse").  The district court then distinguished three other decisions "that find that a psychiatric examination is an adverse action" on the grounds that in those cases, the examination "tends to be combined with an additional employment action."  (App. 42 n.5).  This was improper, since *Burlington Northern* specifically counsels against adopting *per se* rules as to whether a given action is materially adverse.  Thus, the district court erred in relying on other case law – involving different factual circumstances – to conclude that a psychiatric or psychological examination could not be an adverse employment action unless it was "combined" with some other adverse action.

As another district court properly recognized in recently denying summary judgment on a state government employee's retaliation claim, a reasonable employee would "be dissuaded from complaining about discrimination by the prospect of undergoing such an examination."  *Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 495 (S.D.N.Y. 2009).  This is even more heightened where, as here, the agency "relied on testimony of . . . individuals alleged to have retaliated against plaintiff – to support the proffered reason for referring plaintiff for the examination."  *Id.* at 496.  As in *Flynn*, it was Ms. Talavera's first-level supervisor (Coston) who referred her to the psychiatric examination <u>and</u> who later recommended that she be terminated.  (App. 591-593).

Referring a security specialist such as Ms. Talavera to a psychiatric examination carries a stigma that can ruin her career and deter her from pursuing her complaints about workplace discrimination, and it reflects the employer's determination that she somehow cannot perform in her position. Under these circumstances, the district court erred in adopting a *per se* rule that a psychiatric exam, "by itself," was not an adverse employment action. Instead, under *Burlington Northern*, the district court should have considered the fact that it was the employee's own supervisors who were referring her to the exam, which a reasonable employee could believe was but the first step in a broader attempt to force the employee out of her job.

Moreover, the administrative agencies with expertise in adjudicating discrimination claims by federal employees have similarly recognized that whether a forced psychiatric or psychological examination is an adverse employment action depends upon the individual circumstances of the examination and of the employee's work situation, and is not subject to any blanket rule as the district court adopted. Even if the examination itself does not directly lead to a termination, the mere stigma to the employee of having been referred for an unauthorized or unjustified examination can, by itself, have an adverse effect on an employee. Hence, the Office of Personnel Management (OPM) has adopted careful limits to when a federal agency can order a psychiatric examination or

25

psychological assessment, which can only be conducted if the results of a prior medical examination "indicates no physical explanation for [the employee's] behavior or actions," or the position specifically calls for a psychiatric or medical evaluation, <u>and</u> the examination "must be conducted in accordance with accepted professional standards . . . and may only be used to make legitimate inquiry into a person's mental fitness to successfully perform the duties of his or her position." *See* 5 C.F.R. § 339.301(e).

The Merit Systems Protection Board recognized that these "highly specific restrictions on agency use of psychiatric examinations" were enacted by the Office of Personnel Management "in response to the concerns of a Congressional committee with oversight responsibility regarding the civil service." *Harris v. Dept. of the Air Force*, 62 M.S.P.R. 524, 529 (M.S.P.B. 1994). This refers to the 1978 House Report which found that involuntary psychiatric examinations place "the employee in a position of being a defendant who may lose his or her present and future prospects for employment as well as reputation in the community." *See* Subcommittee on Compensation and Employee Benefits of the Committee on Post Office and Civil Service, 95th Cong., 2d Sess., *Forced Retirement/Psychiatric Fitness for Duty Exams*, at 18 (Comm. Print 1978) ("1978 House Report").

Here, if an employee is subjected to a single psychiatric examination, as the agency attempted to subject Ms. Talavera, "it is unlikely that a sufficiently certain

26

psychiatric diagnosis of mental illness can be made on the basis of one or two interviews with an employee under great personal stress, in an adversary setting without commitment to therapy." *Id.*

More generally, subjecting an employee to involuntary psychiatric examinations, with the goal of forcing them out of their position, can be a retaliatory device, as the Supreme Court recognized in discussing this 1978 House Report: "the Subcommittee found that several Government agencies had used involuntary mental disability retirements as a disciplinary tool against unpopular employees." *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 783 (1985) (citing 1978 Report, at 15). Further, the results of these examinations "are the subject of gossip, or are feared to be so, by the employees involved in psychiatric examinations," which "are a part of the stigma effect feared and experienced by employees." *See* 1978 House Report, at 20.

Thus, the Merit System Protection Board, in applying Section 339.301(e), recognized that a psychiatric or psychological examination, standing alone, can be an adverse action, or otherwise unjustified. *See Traynor v. Dept. of the Air Force*, 64 M.S.P.R. 386, 392 (M.S.P.B. 1994) ("Thus, we find that the appellant had a reasonable belief that the agency was abusing its authority in ordering him to undergo a psychiatric examination. Moreover, we are mindful of the stigma that attaches to an employee who receives such an order."); *Harris*, 62 M.S.P.R. at 529

27

("It is highly invasive of an employee's privacy to force him or her to undergo a psychiatric examination, the results of which will be reported to agency officials."); *see also L'Bert v. Dept. of Veterans Affairs*, 88 M.S.P.R. 513, 520 (M.S.P.B. 2001) ("we find that the agency was not authorized to order the appellant to submit to the psychological examination . . . and that it therefore may not discipline her for avoiding that examination or otherwise failing to cooperate in connection with the order").

Similarly, the EEOC, in addressing claims by postal employees regarding forced psychiatric or other fitness-for-duty examinations, has recognized that the examination can be the basis for a Title VII or Rehabilitation Act claim, even though postal employees are not covered by 5 C.F.R. § 339.301. *See, e.g.*, *Munford v. Potter*, EEOC No. 01A60384, 2006 WL 2041355, at *2 (E.E.O.C. July 12, 2006) ("When an agency requires an employee to be sent for a fitness-for-duty exam, the agency affects a term, condition, or privilege of employment of that employee, thus rendering the complainant aggrieved."); *Henderson v. Runyon*, EEOC No. 01970326, 1997 WL 792563, at *1 (E.E.O.C. Dec. 18, 1997) ("Specifically, merely expunging any mention of the FFDE [examination] does not remedy the fact that appellant was forced to undergo the examination. Moreover, it is not apparent that the violation, *i.e.*, allegedly requiring appellant to undergo a FFDE as a means of discriminating against him, will not recur.").

28

For the foregoing reasons, Amicus supports Ms. Talavera's request that this Court reject the overly restrictive "adverse employment action" standard set forth in the district court's decision, which improperly forecloses any employee from alleging that a forced psychiatric or psychological examination is retaliatory unless the employee can show that the examination was combined with some other adverse employment action.

Instead, under *Burlington Northern*, this Court should provide guidance to the district court in this and other employment retaliation cases, by making clear that whether a psychiatric examination is an adverse employment action for purposes of a retaliation claim depends upon the specific factual circumstances surrounding the examination and the employee's subsequent workplace history.  In particular, district courts should carefully consider retaliation claims when the same supervisors who attempted to force the employee to take the examination subsequently take yet other adverse employment actions against the employee, culminating with termination.

## IV.    Conclusion.

For the foregoing reasons, *amicus,* the Metropolitan Washington Employment Lawyers Association, respectfully submit that this Court should vacate the grant of summary judgment and remand for trial.

Respectfully submitted,

/s/ John R. Ates

_____

John R. Ates, Esquire
Ates Law Firm, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone: (703) 647-7501
Facsimile: (703) 229-6430
j.ates@ateslaw.com


/s/ Alan R. Kabat

_____

Alan R. Kabat, Esquire
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
Telephone: (202) 745-1942
Facsimile:  (202) 745-2627
kabat@bernabeipllc.com

*Counsel to Amicus Curiae*

**Certificate of Compliance with Rule 32(a)(7)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29 and D.C. Cir. Rule 32(a)(7) because the brief contains 6,924 words, less than half the length permissible for the principal brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and D.C. Cir. Rule 32(a)(1) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman.

/s/ Alan R. Kabat

_____

Alan R. Kabat

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amicus Curiae Brief of the Metropolitan

Washington Employment Lawyers Association was served on all parties on this

20th day of August, 2010, by this Court's electronic case filing system and by

electronic mail, with a copy to follow by first class mail to:


Jonathan L. Gould, Esquire
1730 M Street N.W.,
Suite 412
Washington, D.C. 20036
(202) 347-3889
        *Counsel for Appellant*


R. Craig Lawrence, Esquire,
Jane M. Lyons, Esquire
Off ice of the United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7159
        *Counsel for Appellee*



                        /s/ Alan R. Kabat

                        _____

                        Alan R. Kabat